IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

JOHNATHAN OLIVE,                    )
an individual,                      )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )      Case No. CIV-12-412-JHP
                                    )
BOARD OF COUNTY COMMISSIONERS       )
OF BRYAN COUNTY, OKLAHOMA;          )
KEN GOLDEN, THE SHERIFF OF          )
BRYAN COUNTY IN HIS OFFICIAL        )
CAPACITY; and ADVANCED              )
CORRECTIONAL HEALTHCARE, INC.,      )
                                    )
         Defendants.                )

**<u>FINDINGS AND RECOMMENDATION</u>**

This matter comes before this Court on the Motion for Summary Judgment filed by Defendant Advanced Correctional Healthcare, Inc. (Docket Entry #77). By Order entered November 13, 2013, United States District Judge James H. Payne, the judge presiding over this case, referred the subject Motion to the undersigned for the purpose of entering Findings and a Recommendation as to its final disposition. The briefs were subsequently supplemented by the parties with leave of court. This Court specifically finds that no hearing is necessary to resolve the issues raised by the subject Motion.

On October 9, 2010, Plaintiff was incarcerated in the Bryan County Jail. At approximately 11:41 a.m., another inmate present in the facility pushed Plaintiff into a metal chair or table resulting in Plaintiff fracturing the bones above his right wrist.

Jail personnel notified the physician provided to the facility by Defendant Advanced Correctional Healthcare, Inc. ("ACH"), Dr. Matticks. ACH contracted with the Bryan County jail to provide medical services from October 1, 2010 to September 30, 2011. Dr. Matticks advised that Plaintiff needed to go to the emergency room. Plaintiff was transported by ambulance to the Medical Center of Southeastern Oklahoma located in Durant, Oklahoma.

At around 12:20 p.m., Plaintiff arrived at the emergency room. X-rays showed Plaintiff had displaced fractures of the distal radius and ulna of the right arm. Plaintiff was sedated and a surgical procedure was performed by the emergency room physician to reduce the fractures. A splint was placed on Plaintiff's right wrist. Pain medication in the form of Demerol was administered to Plaintiff while in the emergency room.

At around 3:15 p.m., Plaintiff was discharged back into the custody of the Bryan County jail. The emergency room physician arranged for Plaintiff's follow-up appointment with orthopedic physician, Dr. Chad Crawley for October 11, 2010 at 3:45 p.m. in McAlester, Oklahoma. Plaintiff was also provided pain medication upon discharge consisting of acetaminophen/hydrocodone, 500 mg/7.5 mg.

On October 10, 2010, Jeff Williams, PA, the physician's assistant at the Bryan County jail ordered that Plaintiff's pain medication be changed to two Tylenol #3 tablets, three times daily.

Plaintiff received this modified prescription for medication on a daily basis from October 10, 2010 until he was transferred from the jail on October 21, 2010.

On the morning of October 11, 2010, ACH nurse Cecilene Stevens, LPN ("Stevens") was told that Plaintiff was scheduled for surgery. Stevens faxed a notification of the surgery to the Department of Corrections ("DOC") with a medical transfer request asking the DOC if they were to keep the surgery appointment. Since Plaintiff was a sentenced inmate, the jail was required to obtain pre-approval from the DOC for any non-emergency off-site medical treatment for Plaintiff. Stevens later learned that Plaintiff did not have a surgery scheduled but rather had an appointment to see Dr. Crawley at the specified time.

The jail did not receive approval back from the DOC in time for Plaintiff to see Dr. Crawley on October 11 but the appointment was rescheduled for the next available one on October 18, 2010. At the rescheduled appointment, Dr. Crawley assessed Plaintiff and went over the options for treatment with him. Initially, the plan was to treat it non-operatively. Dr. Crawley noted Plaintiff was scheduled to have surgery for a tendon transfer to try to give him some wrist extension. Dr. Crawley stated in his treatment notes that he feared that with the displacement he already had, the tendon transfers would not do any good due to the post traumatic arthritis and malunion. After giving him both options, Plaintiff

3

opted to proceed with surgery to address the fracture but not the wrist drop.

On October 20, 2010, Dr. Crawley performed an open reduction internal fixation of the right distal radius fracture with interarticular comminution. On October 21, 2010, Plaintiff was transferred from the Bryan County jail to DOC custody where he remains.

Plaintiff testified that he knew from observing his arm and from his conversations with Dr. Crawley that the delay of his surgery caused him injury and disfigurement when he last saw Dr. Crawley on October 20, 2010.

Dr. Crawley provided an affidavit in connection with ACH's motion for summary judgment. In the affidavit, Dr. Crawley states, in pertinent part:

> The fact that Mr. Olive's surgery by me was not performed sooner than October 20, 2010 did not make the surgery more complicated and did not in any way affect he surgery or the outcome from the surgery. In fact, the decreased soft tissue swelling on Oct. 20 allowed for an easier reduction of the fracture. There was not damage or injury to Johnathan Olive's muscles, vascular system, nerves or any other part of his body because surgery was not performed sooner than October 20, 2010. Even if I had originally seen the patient in my office on October 11, 2010, I most likely would have delayed the surgery to October 19 or 20, my usual OR days, to allow for the soft tissue swelling to subside.
>
> 7. The timing of the surgery (i.e. from the injury date to the date of may surgery) was within accepted standards of care.

4

> 8. As I advised Mr. Olive before his October 20, 2010 surgery, he had an old pre-existing wrist drop injury to his right arm from a previous radial nerve injury from previous trauma. I advised Mr. Olive that the surgery which I performed on October 20, 2010 would not improve his pre-existing nerve damage and wrist drop.

On October 2, 2012, Plaintiff filed a Complaint against the Board of County Commissioners of Bryan County, Oklahoma (the "Board") alleging a violation of his constitutional rights to be free from cruel and unusual punishment, excessive force, and violation of his due process rights as enforced through 42 U.S.C. § 1983. On April 19, 2013, Plaintiff filed an Amended Complaint adding Defendants Ken Golden ("Golden"), in his official capacity as Sheriff of Bryan County, Oklahoma and ACH. Plaintiff maintained his constitutional claims against the Board and Golden but included claims against ACH for medical negligence for allegedly failing to provide adequate medical attention, care, treatment, and medications for his injuries. Plaintiff also added a claim for punitive damages against ACH.

ACH, which is headquartered in Peoria, Illinois, ended its contract with Bryan County, Oklahoma on September 30, 2011. Since that date, ACH has not had any involvement with the Bryan County Jail, the Board, or the Bryan County Sheriff. ACH had no notice or knowledge that Plaintiff filed a lawsuit against the Board until ACH was served with Plaintiff's Amended Complaint. Until ACH was served with the Amended Complaint, ACH had no knowledge or notice that Plaintiff was making a claim against ACH or any other party.

In connection with this action, Plaintiff advised the Court on March 3, 2014 that his medical expert, Dr. Aaron J. Wallace, would no longer be testifying in the case due to his deteriorating health. The Court allowed Plaintiff until April 7, 2014 to procure a new expert and provide an expert report. Plaintiff advised counsel by e-mail that he would be proceeding in this case without the services of an expert witness.

ACH filed the subject Motion contending that (1) Plaintiff's negligence claim is barred by the applicable statute of limitations; (2) Plaintiff's negligence claim does not relate back to the date of the filing of the original Complaint but, even if it does relate back to that date, the claim is still time-barred; and (3) Plaintiff cannot demonstrate that he sustained an injury which was directly caused by the alleged act of negligence by ACH of causing his surgery to be delayed. Additionally, through the supplemental briefing, ACH contends Plaintiff cannot provide sufficient evidence to support a medical negligence claim since his expert witness is no longer going to testify in this case. Moreover, ACH asserts Plaintiff cannot establish the standard of care for medical providers in a jail or whether that standard of care was violated causing Plaintiff additional injury without the testimony of a medical expert.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial.  <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).  For purposes of the pending Motion, this Court finds no genuine issue as to any fact which is material to the dispute in this case.  As a result, the question remaining for consideration by this Court centers upon whether ACH is entitled to prevail on the Motion as a matter of law.

ACH first asserts Plaintiff's claims are barred by the

applicable statute of limitations. In this regard, Plaintiff's medical negligence claim against ACH is controlled by the statute of limitations set forth in Okla. Stat. tit. 12 § 95(11) which provides:

> 11. All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:
>
>    a. the State of Oklahoma,
>    b. a contractor of the State of Oklahoma, or
>    c. a political subdivision of the State of Oklahoma,
>
> to include, but not limited to, the revocation of earned credits and claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued.

Clearly, Plaintiff was in the custody of the Bryan County Jail at the time he allegedly suffered the injury allegedly caused by the negligent actions of an employee of ACH. On its face, the one year statute of limitations provided in § 95(11) would apply to Plaintiff's claim.

"The statute of limitations begins to run when the cause of action accrues. A cause of action accrues when a litigant could first maintain an action to successful conclusion." <u>Wing v. Lorton</u>, 261 P.3d 1122, 1125 (Okla. 2011) citing <u>Ranier v. Stuart and Freida, P.C.</u>, 887 P.2d 339, 340-341 (Okla. Ct. App. 1994)(citations omitted). In the case of a medical negligence claims, "the cause of action accrues when a medical provider's acts or omissions fall below the standard of care and have caused injury

8

to the plaintiff." Id. citing Grayson v. State ex rel. Children's Hosp., 838 P.2d 546, 549–550 (Okla. Ct. App. 1992). "In the majority of malpractice cases . . . the injury occurs contemporaneously with the negligent act." Id. quoting Reynolds v. Porter, 760 P.2d 816, 820–821 (Okla. 1988).

By Plaintiff's own admission, he believed that he had sustained an injury as a result of the delay in obtaining surgery on his wrist when Dr. Crawley told him so on October 20, 2010. Plaintiff also observed swelling and bruising on his arm at this time. Consequently, Plaintiff's cause of action against ACH accrued on October 20, 2010. The lawsuit was commenced against ACH on April 19, 2013, clearly outside of the express one year statute of limitations under § 95(11).

In order to contest the bar of this action, Plaintiff first contends the statute of limitations established under § 95(11) is not constitutional as representing a prohibited special law. The Oklahoma Constitution provides that

> The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
>
> * * *
>
> For limitation of civil or criminal actions; . . .
>
> Okla. Const. Art. 5 § 46.

In evaluating whether a particular law is violative of the special law prohibition,

> the only issue to be resolved is whether a statute on a subject enumerated in those sections targets less than an entire class of similarly situated persons or things for different treatment. Where a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject of the legislation, and there must be some distinctive characteristic upon which different treatment is reasonably founded. It is not the role of [the] Court to question the desirability, wisdom, or logic of a valid statutory classification.
>
> EOG Resources Marketing, Inc. v. Okla. State Bd. of Equalization, 196 P.3d 511, 521 (Okla. 2008)(citations omitted).

On this issue dealing specifically with § 95(11), this Court finds most instructive the well-reasoned opinion of United States District Judge Joe Heaton in the case of Pratt v. The GEO Group, Inc., 802 F.Supp.2d 1269 (W.D. Okla. 2011). Judge Heaton found the controlling question to be whether persons who are subject to the one year statute are in fact "similarly situated" to those to whom the two year statute of limitations applies or, more particularly, whether inmates in custody are similarly situated with the general public. Id. at 1272. The court concluded that the legislature was motivated by a concern that inmates were more prone to filing frivolous lawsuits and enacted various statutes to address the issue, including § 95(11). Judge Heaton determined that the concern was "reasonable" and that similar federal requirements existed which were directed at prisoners such as a prohibition to successive habeas petitions. He also noted that Oklahoma law imposes restrictions upon inmates which require the exhaustion of administrative remedies before a lawsuit may be initiated to "weed

out" frivolous claims and permit the grievance system within the prison system to resolve disputes as quickly and efficiently as possible. Judge Heaton concluded that inmate suits "present issues and concerns not present, or present to the same extent, with claims asserted by the public at large." Id. at 1273. He determined that the separate limitations period for inmates in custody "bears a reasonable relationship to what appears to have been the legislation's legitimate purpose – to discourage frivolous lawsuits and encourage the prompt resolution of disputes arising in an institutional setting." He therefore found §95(11) did not run afoul of the Oklahoma Constitution's prohibition against special laws. Id. This Court similarly finds that the separate, shorter statute of limitations for actions instituted by inmates in custody is reasonable for this group which is not similarly situated with the public in general.

Plaintiff also asserts § 95(11) could be interpreted to apply a one year limitation upon actions having no relationship to the inmates incarceration which involve "causes of action for injury to the rights of another" and accrue while the inmate is in custody. Plaintiff extends an unreasonable and wholly nonsensical interpretation to a statute which is clearly intended to curtail frivolous prison litigation. The statute also references the "revocation of earned credits" which would only apply in the prison setting. Nothing in the statute suggests the second portion of the

provision applies outside of the prison setting.

Plaintiff next argues the filing of the Amended Complaint which named ACH as a party defendant for the first time relates back to the date of the filing of the original Complaint. The relating back of amendments is governed by Fed. R. Civ. P. 15(c)(1), which provides

> **(c) Relation Back of Amendments**
>
> > **(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
> >
> > > (A) the law that provides the applicable statute of limitations allows relation back;
> > >
> > > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> > >
> > > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > >
> > > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > > >
> > > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The clear and unequivocal language of Rule 15(c)(1)(C)(ii)

requires that the plaintiff made a mistake as to the identity of the party defendant to be added. The Tenth Circuit has further honed the requirements of this subsection in agreeing with the eight other Circuit courts deciding the issue in holding "a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of" Rule 15(c)(1)(C)(ii). Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004). The fact Plaintiff did not learn of ACH's identity until it was allegedly revealed in discovery does not satisfy the requirements of a "mistake" under the Rule. Moreover, nothing in the record indicates that ACH was aware or should have been aware of the allegations against it since its relationship with the Bryan County Jail ended shortly after the incident which gave rise to this action. Consequently, the allegations against ACH contained in the Amended Complaint do not relate back to the date of the filing of the original Complaint. As a result, Plaintiff's medical negligence claim against ACH was not filed within the one year statute of limitation under Oklahoma law and should be dismissed.[1]

Because this Court has found the sole claim against ACH to be time-barred, the remaining argument on the merits of the negligence

---

[1] This Court would also note that the cause of action against ACH was not filed within two years of the date of accrual of the claim. Even under the more liberal statute of limitations at Okla. Stat. tit. 12 § 95(3) for negligence, Plaintiff's claim against ACH would be time-barred since it did not qualify for relating back to the time of the filing of the original Complaint.

claim contained in ACH's Motion need not be addressed.  Similarly, it is not necessary to address the issue of whether Plaintiff could maintain a medical negligence claim at trial without the testimony of an expert witness.

BASED UPON THE FOREGOING, IT IS THE RECOMMENDATION OF THE UNDERSIGNED that the Motion for Summary Judgment filed by Defendant Advanced Correctional Healthcare, Inc. (Docket Entry #77) be **GRANTED** and that all claims against ACH be **DISMISSED** as time-barred by the applicable statute of limitations.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the findings made herein.

IT IS SO ENTERED this 2nd day of June, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE