```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF OKLAHOMA
```

JOHNATHAN OLIVE,                  )
an individual,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )       Case No. CIV-12-412-JHP
                                  )
BOARD OF COUNTY COMMISSIONERS     )
OF BRYAN COUNTY, OKLAHOMA;        )
KEN GOLDEN, THE SHERIFF OF        )
BRYAN COUNTY IN HIS OFFICIAL      )
CAPACITY; and ADVANCED            )
CORRECTIONAL HEALTHCARE, INC.,    )
                                  )
        Defendants.                )

## FINDINGS AND RECOMMENDATION

This matter comes before this Court on the Motion for Summary Judgment filed by Defendant Ken Golden, Sheriff of Bryan County, Oklahoma (Docket Entry #78). By Order entered November 13, 2013, United States District Judge James H. Payne, the judge presiding over this case, referred the subject Motion to the undersigned for the purpose of entering Findings and a Recommendation as to its final disposition. The briefs were subsequently supplemented by the parties with leave of court. This Court specifically finds that no hearing is necessary to resolve the issues raised by the subject Motion.

On August 27, 2010, Plaintiff was booked into the Bryan County Jail on applications to revoke suspended sentences and on a Drug Court revocation. At all times relevant to this action, Bill Sturch was the Sheriff of Bryan County, Oklahoma and Golden was the

Under Sheriff. Golden has since become the Bryan County Sheriff. Plaintiff remained in the Bryan County Jail until he was released into the custody of the Oklahoma Department of Corrections on October 21, 2010. At the time of his booking, Plaintiff was briefed on the inmate rules and policies of the Bryan County Jail. In his deposition, Plaintiff acknowledged that his signature is on the Bryan County Inmate Acceptance Form indicating that he was briefed on the inmate rules and practices and received various items for use in the jail. The form does not specifically state which inmate rules and practices on which he was briefed. However, Plaintiff was provided with the Bryan County Jail Inmate Handbook, Seventh Edition - March, 2007 (the "Inmate Handbook") in his deposition and acknowledged that he had been briefed on the procedures in that document.

With regard to bringing inmate grievances to the attention of jail personnel, the Inmate Handbook provides, in pertinent part:

> **S. Channels of communication**
> 
> There are specific people to contact regarding your various needs and problems. If you have special problems or need information, the confinement officer on duty will assist you in directing your requests to the appropriate person. Any derrogatory (sic) or cussing on the forms will result in the form being thrown away and not answered. Any frivilous (sic) or continued sarcasm will result in loss of priviledges (sic).
> 
> * * *
> 
> If you have a complaint regarding conditions or actions taken against you, you may submit a written grievance form. After completion of this form, place it in a sealed

envelope and return it to your confinement officer. If you receive lockdown paperwork you have a chance to list your comments for return and review.

If you do not have an envelope one will be made available to you upon request. A reply will be sent back (sic) soon as possible, and if you are not satisfied with his reply you may file another grievance directly to the state jail inspector.

> OKLAHOMA STATE DEPT. OF HEALTH
> JAIL INSPECTION DIVISION
> 1000 N.E. 10TH
> OKLAHOMA CITY, OKLAHOMA 73117

The following is a list of forms used by the Bryan County jail and their uses.

1. Medical request form – used to request medical attention (BCJ 001).

   * * *

7. Inmate grievance forms – used to file a complaint against the facility, staff, or inmates (BCJ 007).

   * * *

Forms will be passed out each night at approximately 8:00 P.M. These forms are read each morning by the jail staff. Some requests require immediate attention, however, others may not be answered right away. Please be patient and you will receive your reply as soon as possible. Abuse of these forms will result in disciplinary action against you.

Also in effect at the time was the Bryan County Policy and Procedure manual (the "Manual") which also provides for inmate grievances. This Manual sets forth that inmates must have first completed a Request to Staff in an effort to resolve the issue at the lowest level. The Manual also states that a grievance will not be entertained unless the Request to Staff accompanies the grievance. The grievance must also be brought within 48 hours of

3

the problem or action.

The Manual provides for three classifications of grievances - informal, standard, or emergency. An informal grievance may be "voiced" at any time to a staff member. However, if the staff member cannot or does not resolve the informal grievance, the inmate is required to initiate a formal standard grievance. A standard grievance is made on a form within 48 hours "after the incident has occurred." The standard grievance will be addressed by staff personnel in the manner specified in the Manual. An emergency grievance "are those that pose an immediate threat to the welfare or safety of an inmate." An initial determination is made whether the grievance "is life-threatening and should be immediately reported to the on-duty supervisor." The Manual also specifies the manner in which a designated emergency grievance is addressed.

The Bryan County Jail also has a Policy and Procedure - Medical Services manual (the "Medical Manual"). The Medical Manual provides that inmates may request health care either orally or in writing. It also provides that "[a]n inmate may file a complain regarding health care through the inmate grievance system."

On October 9, 2010, Plaintiff was incarcerated in the Bryan County Jail. At approximately 11:41 a.m., another inmate present in the facility pushed Plaintiff into a metal chair or table resulting in Plaintiff fracturing the bones above his right wrist.

Jail personnel notified the physician provided to the facility by Defendant Advanced Correctional Healthcare, Inc. ("ACH"), Dr. Matticks. ACH contracted with the Bryan County jail to provide medical services from October 1, 2010 to September 30, 2011. Dr. Matticks advised that Plaintiff needed to go to the emergency room. Plaintiff was transported by ambulance to the Medical Center of Southeastern Oklahoma located in Durant, Oklahoma.

At around 12:20 p.m., Plaintiff arrived at the emergency room. X-rays showed Plaintiff had displaced fractures of the distal radius and ulna of the right arm. Plaintiff was sedated and a surgical procedure was performed by the emergency room physician to reduce the fractures. A splint was placed on Plaintiff's right wrist. Pain medication in the form of Demerol was administered to Plaintiff while in the emergency room.

At around 3:15 p.m., Plaintiff was discharged back into the custody of the Bryan County jail. The emergency room physician arranged for Plaintiff's follow-up appointment with orthopedic physician, Dr. Chad Crawley for October 11, 2010 at 3:45 p.m. in McAlester, Oklahoma. Plaintiff was also provided pain medication upon discharge consisting of acetaminophen/hydrocodone, 500 mg/7.5 mg.

On October 10, 2010, Jeff Williams, PA, the physician's assistant at the Bryan County jail ordered that Plaintiff's pain medication be changed to two Tylenol #3 tablets, three times daily.

Plaintiff received this modified prescription for medication on a daily basis from October 10, 2010 until he was transferred from the jail on October 21, 2010.

On the morning of October 11, 2010, ACH nurse Cecilene Stevens, LPN ("Stevens") was told that Plaintiff was scheduled for surgery. Stevens faxed a notification of the surgery to the Department of Corrections ("DOC") with a medical transfer request asking the DOC if they were to keep the surgery appointment. Since Plaintiff was a sentenced inmate, the jail was required to obtain pre-approval from the DOC for any non-emergency off-site medical treatment for Plaintiff. Stevens later learned that Plaintiff did not have a surgery scheduled but rather had an appointment to see Dr. Crawley at the specified time.

The jail did not receive approval back from the DOC in time for Plaintiff to see Dr. Crawley on October 11 but the appointment was rescheduled for the next available one on October 18, 2010. At the rescheduled appointment, Dr. Crawley assessed Plaintiff and went over the options for treatment with him. Initially, the plan was to treat it non-operatively. Dr. Crawley noted Plaintiff was scheduled to have surgery for a tendon transfer to try to give him some wrist extension. Dr. Crawley stated in his treatment notes that he feared that with the displacement he already had, the tendon transfers would not do any good due to the post traumatic arthritis and malunion. After giving him both options, Plaintiff

opted to proceed with surgery to address the fracture but not the wrist drop.

On October 20, 2010, Dr. Crawley performed an open reduction internal fixation of the right distal radius fracture with interarticular comminution. On October 21, 2010, Plaintiff was transferred from the Bryan County jail to DOC custody where he remains.

Plaintiff testified that he knew from observing his arm and from his conversations with Dr. Crawley that the delay of his surgery caused him injury and disfigurement when he last saw Dr. Crawley on October 20, 2010.

Dr. Crawley provided an affidavit in connection with ACH's motion for summary judgment. In the affidavit, Dr. Crawley states, in pertinent part:

> The fact that Mr. Olive's surgery by me was not performed sooner than October 20, 2010 did not make the surgery more complicated and did not in any way affect he surgery or the outcome from the surgery. In fact, the decreased soft tissue swelling on Oct. 20 allowed for an easier reduction of the fracture. There was not damage or injury to Johnathan Olive's muscles, vascular system, nerves or any other part of his body because surgery was not performed sooner than October 20, 2010. Even if I had originally seen the patient in my office on October 11, 2010, I most likely would have delayed the surgery to October 19 or 20, my usual OR days, to allow for the soft tissue swelling to subside.
>
> 7. The timing of the surgery (i.e. from the injury date to the date of may surgery) was within accepted standards of care.
>
> 8. As I advised Mr. Olive before his October 20, 2010

surgery, he had an old pre-existing wrist drop injury to his right arm from a previous radial nerve injury from previous trauma. I advised Mr. Olive that the surgery which I performed on October 20, 2010 would not improve his pre-existing nerve damage and wrist drop.

Plaintiff contends that various officers in the Bryan County Jail - some identified, some not - violated his constitutional rights in (1) pushing him onto his bed when he continued to look at persons in the booking area from the window in his cell; (2) placing him in administrative segregation for no reason; (3) giving Plaintiff pain medication different than was prescribed in the hospital; (4) delaying in taking Plaintiff to his allegedly scheduled surgery with Dr. Crawley; (5) an officer with the jail stepped on the back of his shoes as he was escorting Plaintiff from the courthouse; and (6) placing Plaintiff in a restraint chair for being disruptive.

Plaintiff admits that he did not file a written grievance with the Bryan County Jail officials. Plaintiff's father also testified that Plaintiff had mailed grievance forms to him in January or February of 2010 from the Bryan County Jail related to other incidents not a part of this action. Further, Plaintiff's father testified that he was unaware of Plaintiff filling out any grievance forms during the October of 2010 events.

On October 2, 2012, Plaintiff filed a Complaint against the Board of County Commissioners of Bryan County, Oklahoma (the "Board") alleging a violation of his constitutional rights to be

free from cruel and unusual punishment, excessive force, and violation of his due process rights as enforced through 42 U.S.C. § 1983. On April 19, 2013, Plaintiff filed an Amended Complaint adding Defendants Ken Golden ("Golden"), in his official capacity as Sheriff of Bryan County, Oklahoma and ACH. Plaintiff maintained his constitutional claims against the Board and Golden but included claims against ACH for medical negligence for allegedly failing to provide adequate medical attention, care, treatment, and medications for his injuries. Plaintiff also added a claim for punitive damages against ACH.

Golden filed the subject Motion contending that (1) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff failed to demonstrate that an officer of the Bryan County Sheriff's Office violated his constitutional rights; and (3) no policy, procedure, or custom of the Bryan County Sheriff's Office permitted or condoned any alleged constitutional violation against Plaintiff.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing that there is an absence of any issues of

9

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).  For purposes of the pending Motion, this Court finds no genuine issue as to any fact which is material to the dispute in this case.  As a result, the question remaining for consideration by this Court centers upon whether Golden is entitled to prevail on the Motion as a matter of law.

Golden contends the totality of Plaintiff's claims are barred under the PLRA because Plaintiff failed to exhaust his administrative remedies established through the written inmate policies at the Bryan County Jail.  Specifically, Golden asserts Plaintiff did not follow the procedure for initiating inmate grievances by failing to submit a written grievance concerning the

conditions of confinement to which he objected.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. Woodford v. Ngo, 548 U.S. 81, 85 (2006). Inmates are required to exhaust available administrative remedies and suits filed before the exhaustion requirement is met must be dismissed. Booth v. Churner, 532 U.S. 731, 740-41 (2001); Yousef v. Reno, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). It is, therefore, the prison's own grievance procedures that set forth

what the prisoner must do in order to exhaust his or her administrative remedies. Id. (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

The undisputed facts reveal Plaintiff provided no evidence that he ever filed a written grievance despite having been briefed on the Inmate Handbook. While he may have began the grievance process by orally indicating he wanted medical attention, he did not follow through with the filing of a written grievance on the provided jail form as required by both the Manual and the Inmate Handbook when his grievance was not addressed to his satisfaction. Moreover, the record indicates Plaintiff was well aware of the requirement for the submission of written grievances to jail officials, having previously completed the forms for prior alleged complaints. Plaintiff also suggests that his condition may have constituted an emergency such that his oral requests represented an emergency grievance. The medical evidence does not suggest that Plaintiff's condition was life-threatening as required by the jail policies to constitute an emergency grievance.

Plaintiff expends considerable ink in his briefing describing

the transgressions of Lieutenant Kevin Holt against other inmates. The only identified incident involving Lieutenant Holt and Plaintiff alleges the officer stepped on the back of Plaintiff's shoes while escorting Plaintiff to the courthouse. This incident can hardly be considered a constitutional violation let alone one for which Plaintiff has exhausted his required administrative remedies.

Plaintiff also mentions as an apparent attempt at demonstrating that the administrative remedies were not available to him and explaining the reason he failed to file a written grievance that he witnessed jail officials destroying or throwing away grievances. *See* Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011)(To be "available," a remedy must be "capable of use for the accomplishment of a purpose."). Nothing in the evidence, however, suggests that the grievances which were allegedly destroyed were authored by Plaintiff. His assumption that any written grievance he might have submitted would be destroyed is rank speculation without basis in fact. None of these explanations, reasons, or excuses ameliorates Plaintiff's omission in failing to file written grievances. This Court must conclude that Plaintiff's constitutional claims based in § 1983 must be dismissed for his failure to exhaust his administrative remedies.

Because Plaintiff failed to exhaust, this Court need not address the issues contained in the briefing concerning the merits

of the claims against Golden.

BASED UPON THE FOREGOING, IT IS THE RECOMMENDATION OF THE UNDERSIGNED that the Motion for Summary Judgment filed by Defendant Ken Golden, Sheriff of Bryan County, Oklahoma (Docket Entry #78) be **GRANTED** and that all claims against Golden be **DISMISSED** for the failure of Plaintiff to exhaust his administrative remedies as required by the PLRA.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the findings made herein.

IT IS SO ENTERED this 3rd day of June, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE